SCHWARTZ et al. v. WRIGHT.*

S. F. No. 843; March 9, 1899.

56 Pac. 608.

Appeal.—Where the Evidence is Conflicting, and a motion for new trial was denied, the verdict will not be set aside.

Check.—In an Action on a Check, Defendants Denied Delivery, and in proof thereof introduced evidence showing that the check was made in payment of certain stock to be delivered, and entry of the

*Rehearing denied.

other parties in the agreement into a pooling contract, and that the check was taken without consent by one of the parties, to whom it had been given for inspection. Held, that evidence of failure of the consideration for which the check was to be given was admissible as tending to show want of delivery.

Check.—Where the Payee of a Check had Notice of what was to be done by third parties before the check was to be delivered, evidence of negotiations with such third parties in the absence of the payee of the check is admissible to show nondelivery.

Evidence.—A General Objection to Evidence of a Certain Conversation as not had in the presence of one of the parties to the suit was insufficient as affecting certain offensive words used in the conversation, where there was no motion made to strike them out, and they were thereafter repeated to such party in person.

APPEAL from Superior Court, City and County of San Francisco.

Action by Henry Schwartz and others against William H. Wright. Judgment for defendant and plaintiffs appeal. Affirmed.

F. W. Van Reynegom, P. F. Demand and J. J. Roche for appellants; Daniel Titus for respondent.

PRINGLE, C.—Appeal from order denying motion for new trial and from judgment. Action brought upon the following check:

"San Francisco, Cal., Nov. 14, 1894.
"Union Savings Bank of San Jose, Cal.:
"Pay to F. W. Van Reynegom, or order, $3,300—three thousand three hundred dollars.
"WM. H. WRIGHT,
"By H. W. WRIGHT,
"Attorney in Fact.
"Anglo-Cala. Bank:
"Please pay."

The jury rendered a verdict in favor of the defendant. There is a painful conflict of testimony in the case. The defense is that the check was never absolutely delivered, and that there was no completed consideration for it. The facts are peculiar. The testimony on behalf of the defendant is that William H. Wright was anxious to obtain the control of the majority of the stock of the Oceanic Phosphate Com-

pany, and for that purpose entered into negotiations with M. C. Chapman, who undertook to put into his hands 2,707 shares of the stock, the requisite majority being 5,070 shares. Chapman and John A. Magee owned 2,461 shares, but they were in the hands of Judge Van Reynegom, who held them in pledge to secure a note of Chapman and Magee to Bayle, Lacoste & Co. They could be released and put into the pool by payment to Van Reynegom, for Bayle, Lacoste & Co., of $3,300. In order to accomplish this, W. H. Wright agreed to obtain the $3,300, if Chapman would secure other stock to make up 2,707 shares, and would complete the pool of 5,070 shares. The negotiations lasted some weeks, and before they were completed W. H. Wright went to the eastern states, leaving power of attorney with his brother, H. W. Wright, with instructions to complete the transaction. On November 14, 1894, H. W. Wright came from San Jose to San Francisco with W. I. Gill, his attorney, and met Chapman and Magee in the office of Magee. A pooling agreement was prepared in duplicate or triplicate, to be signed by stockholders for 5,070 shares of stock, including Chapman and Magee for 2,707 shares. The arrangement was complicated, and involved the preparation also of two notes by stockholders, which were to aid Wright in obtaining the required $3,300, and also a contract between Wright and Chapman and Magee, by which Wright was to be secured for his advance. The morning was consumed in arranging details, and at 2 o'clock Judge Van Reynegom was sent for to bring the stock held by him in pledge, and complete the transaction. Here the stories diverge. The statement of H. W. Wright and Gill, his attorney, is that the pooling contract was fully and freely discussed in the presence of Judge Van Reynegom and John Lacoste, of the firm of Bayle, Lacoste & Co., as part of the transaction; that Mr. Wright then explained that he had not brought any money, or any certified check, but that he could give his check upon the San Jose Union Savings Bank of San Jose, payable at the Anglo-California Bank in San Francisco, if that would be acceptable, and that he thereupon drew the check in question, and passed it over to Judge Van Reynegom for his inspection; that Van Reynegom took out the certificates of stock held by him, indorsed them, and passed them over to Mr. Gill; that 246 shares were wanting to make up the 2,707 that Chapman and Magee were to sup-

ply; that Chapman took from his pocket 83 shares more, and promised to supply the remaining 163; that all the papers connected with the pooling contract were on the table, and while Wright was signing the pooling papers, and Gill was talking with Chapman about making up the deficiency, Judge Van Reynegom took the check, and retired; that just as Mr. Gill noticed that Van Reynegom had gone out with the check, he learned from Chapman and Magee that they both made objection to signing the pooling contract, whereupon Gill said that it was a fraud and a swindle, and called upon Mr. Wright to go with him to the Anglo-California Bank, and stop the payment of the check, which they did, and then went immediately to the office of Judge Van Reynegom, and used the same strong language, tendering back the stock, and demanding the check; that Van Reynegom expressed surprise at the failure of Chapman and Magee to finish the pooling transaction, and promised not to negotiate the check, and not to part with it "until it was all fixed up satisfactorily." On the other hand, the statement of Judge Van Reynegom is that he never promised to hold the check; that he had no knowledge whatever of any other matter being connected with the transfer of his stock, or the delivery of the check; that the delivery was absolute and unconditional, and that otherwise he would never have parted with the stock. John Lacoste fully corroborates him. These are the strong points of discrepancy. There is great conflict. But the story of the defendant does not necessarily involve what Mr. Gill said, "This is all a fraud." It might well be that Judge Van Reynegom took the check and delivered the stock supposing that all matters between the other parties were, or would immediately be, adjusted; and that obstruction on the part of Chapman unexpectedly arose, and changed the aspect of affairs. But, however that may be, the question was fairly submitted to the jury. The court stated the case from both points of view, and said, "The one great point to be determined here is whether or not there was an absolute or conditional delivery of this check." The verdict was in favor of the defendant. There is clearly conflict of evidence. The motion for new trial was denied by the court in which the trial was had, and the verdict cannot be set aside without violating the well-settled rule of this court.

The appellant claims that errors were committed by the court below in the admission of evidence. Most of these errors are charged to be in admitting evidence to show the whole consideration for or inducement to the giving of the check, as has been stated above. It is to be observed that the true question is not whether there was a sufficient consideration for the check, for, if the check had been unconditionally delivered, its payment could not have been defeated if Wright had relied upon the promise of Chapman to furnish the missing 163 shares of stock and the required signatures to the pooling contract, and he had failed to do so. Hence this evidence, touching the consideration, was admissible, not as tending to show insufficiency of the consideration of a check delivered, but as showing, in a consideration unperformed, a circumstance tending strongly to show that the check was undelivered. And the criticism of the appellant that evidence was admitted of negotiations had between Chapman and Wright when Van Reynegom and Lacoste were not present is not just, because the object of those negotiations was to establish the contemplated consideration; and it was sufficient to require, as the court in its ruling very plainly did, that Van Reynegom and Lacoste had notice of all that was to be done before the check was to be delivered. Negotiations uncompleted, with notice to the payee of the want of completion, would certainly be a strong circumstance tending to show that the transaction was not ripe for completion. The payees need not have been present at all such negotiations if they were seasonably affected with notice of them.

Appellant insists also upon the fact that Judge Van Reynegom and John Lacoste were not parties to the pooling contract, and hence could not be affected by any evidence concerning that contract or the two promissory notes that were to be signed with it. But the answer to this is involved in the answer to the last position. The pooling contract was to be a part of the consideration for the check; and the failure to complete it within the knowledge of appellant's assignors was a circumstance tending to show that there was no intention to deliver the check. It is claimed that there was no issue in the pleadings under which this evidence was admissible. But it tended to sustain the averment that there was no delivery of the check.

Appellant contends that it was error to admit the statement of Mr. Gill of his conversations with Chapman and Magee in the office of Magee after Judge Van Reynegom and John Lacoste had left with the check. But those were the conversations by which Chapman and Magee both refused to sign the pooling contract. It became necessary to show them as an important ingredient in the failure to complete the consideration. Connected with this statement of facts is the declaration made by Gill, upon Magee's declining to sign: "Mr. Wright, let us go to the bank and stop that check. This is a fraud and a swindle"—the admission of which is relied on as error. There was no motion made to strike out this characterization of the transaction. A general objection to allowing the witness to state what happened in the absence of Van Reynegom and Lacoste preceded these statements of Mr. Gill. But the objection was not good, and no objection was made separately to these offensive words by motion to strike them out. Besides, the same expressions were repeated by Mr. Gill in the presence of Judge Van Reynegom and went to the jury without objection. The rights of appellant's assignors were fully protected by the following charge: "I have instructed the jury that, if it was known to Judge Van Reynegom and Mr. Lacoste that something else was to be done at the time of the giving of the check, then it was a conditional delivery, and Mr. Wright would not be liable unless that agreement was carried out. I do not mean to instruct them as to any secret understanding in Mr. Wright's mind or Mr. Gill's mind, but it must have been an agreement that was understood by all of the parties."

Other points are made by appellant, presenting in different aspects objections to the admission of evidence and to the instructions given by the court, but they are sufficiently answered by the above. I advise that the judgment and order appealed from be affirmed.

We concur: Britt, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.